**Date signed July 23, 2004**



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ELLA M. KOHLHEIM | : | Case No. 02-10340PM |
| | : | Chapter 7 |
| Debtor | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| REGENCY SAVINGS BANK, FSB | : | |
| Movant | : | |
| vs. | : | |
| | : | |
| ELLA M. KOHLHEIM | : | |
| CHERYL ROSE, TRUSTEE | : | |
| | : | |
| Respondent | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

MEMORANDUM OF DECISION

This case came before the court on another motion for relief from the automatic stay filed by Regency Savings Bank, FSB ("Regency"). The motion is opposed by the Debtor. The case is governed by § 362(d) of the Bankruptcy Code that provides in pertinent part:

**11 U.S.C. § 362.  Automatic Stay**

   (d) on request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as terminating, annulling, modifying, or conditioning such stay--
      (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
      (2) with respect to a stay of an act against property under subsection (a) of this section, if--

>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization.

This is an unfortunate case that appears to have be triggered by an eminent domain action known as *Washington Metropolitan Area Transit Authority vs. Three Parcels of Land in Prince George's County, Maryland, et al.*, Civil No. DKC-01CV2431. Despite the certainty of the taking of the property and the creation of a temporary easement, the Kohlheim's buried their heads in the sand and failed to consider other arrangements in the face of the taking of a portion of the property. Debtor's operation of her business, known as Central Child Development, deteriorated. Coinciding with this interference with their business was the fact of a spate of bad health suffered by the Debtor and her husband, Edward Kohlheim. These conditions are said to have prevented the Debtor and Mr. Kohlheim from complying with the discovery served upon them by Movant and from attending the hearing on the motion for relief from stay. Therefore, the Kohlheims were unable to offer any testimony to sustain their burden of proof under § 362(d)(2) that the property subject to Regency's liens was necessary to an effective reorganization that is within reasonable prospect. This issue became moot after the hearing on relief from the automatic stay, when on July 6, 2004, this court entered an Order Converting Case to a Case under Chapter 7. Thus, the only remaining issue for the court to decide is whether there is an absence of equity in the property and, if so, what adequate protection should be afford Regency.

The court received the uncontradicted testimony of Regency's appraiser, John W. Richards, whom the court found qualified to render an expert opinion as to the value of the properties. He testified that the value of the property known as 7306 Central Avenue was $400,000.00, that the value of the property known as 7310 Central Avenue (front) was $215,000.00, and that the value of the property known as 7310 Central Avenue (rear) was $50,000.00. There was no evidence to the contrary. The court accepts these valuations. In addition, Regency is to receive in excess of $300,000.00 of the proceeds of the eminent domain action mentioned above.

Evidence was also received that the liens held by Regency were in the sums of $339,173.21, $86,687.26, and $352,043.71 as to the respective properties. Besides Regency's secured claims, liens held by the Internal Revenue Service, the State of Maryland, and Chevy Chase Banks were of record. These liens aggregated $217,522.22 and encumbered all three

properties.  This is pertinent as the "classic test" for determining whether a debtor has any equity in property for the purposes of 11 U.S.C. § 362(d)(2)(A) that is based upon comparing the total amount of all liens against the property and the current value of the property subject to the liens.  If this value is equal to or less than the amount of the liens, there is no equity.  *Nantucket Investors II v. California Bank, (In re Indian Palms Associates, Ltd.*), 61 F3d 197, 207-208 (CA3 1995).  If one were to apply one-third of the aggregate of the other liens against each property that one-third would add $72,507.00 to the total of liens upon each property.   Based on the record developed, the estate may still have more than $50,000.00 in equity in the subject properties that may apply to one or more of the properties.  There is no cross-collateralization of the liens.  However, this equity cushion is being eaten away every passing day, and most likely would not support payment in full of the costs attendant to a foreclosure sale.

In the circumstances, the court will terminate the stay as of September 17, 2004.  This will enable the Trustee, should she deem it appropriate, to try to make a quick last ditch effort to sell some of the property at market value.

An appropriate order will be entered.

cc:
Richard L. Costella, Esq., Miles & Stockbridge, 10 Light Street, Baltimore, MD 21202
Richard H. Gins, Esq., 5028 Wisconsin Avenue, N.W., Suite 300, Washington, DC 20016
Cheryl E. Rose, Trustee, 50 W. Edmonston Drive, Suite 600, Rockville, MD 20852
United States Trustee, 6305 Ivy Lane, #600, Greenbelt  MD  20770

**End of Memorandum**